1  **WO**

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                    FOR THE DISTRICT OF ARIZONA

7

8  Siemens Medical Solutions USA, Inc., et)    No. CV-05-0529-PHX-FJM (LOA)
   al.,                                    )
9                                          )    **REPORT AND RECOMMENDATION**
              Plaintiffs,                  )
10 vs.                                     )
                                           )
11                                         )
   Sequoia Technologies, et al.,           )
12                                         )
              Defendants.                  )
13 _____)

14         This matter arises on the Motion to Set Aside Entry of Default (document # 80)

15 and the Motion for Limited Discovery (document # 89) brought by Defendants: George Smith

16 334, LLC; Rector 42, LLC; Cardinal 37, LLC; Wildmint 615, LLC; Geranium 602, LLC;

17 Sesame 691, LLC; Ripple 100, LLC; Pintail 341, LLC; Roundtree 598, LLC; Squaw Valley

18 609, LLC; Cornflower 528, LLC; Cornflower 482, LLC; Wildmint 618, LLC; Greenhill 596,

19 LLC; Dunlap 39326, LLC; Pinal 500-15-024, LLC; Pinal 500-15-023; LLC; Pinal 500-15-

20 014, LLC; Pinal 500-11-042B, LLC; Pinal 500-11-042A, LLC; Pinal 500-11-041, LLC; MVB

21 Enterprises, LLC; Craig A. Bittner; David Bittner; Maxmillian V.G.L. Bittner Irrevocable

22 Income Trust; and Sequoia K.G.L. Bittner Irrevocable Income Trust.  (document # 80)  The

23 following LLCs have *not* moved to set aside default or otherwise challenged service of

24 process: Squaw Valley 504, LLC; Squaw Valley 505, LLC; Squaw Valley 506, LLC;

25 Greenhill 588, LLC; Greenhill 589, LLC; Longview 96, LLC; Longview 99, LLC; Barberry

26 268, LLC; Pepperweed 101, LLC; Badger 35, LLC; Cornflower 526, LLC; Marigold 614,

27 LLC; Partridge 74, LLC.  (document # 80) During a conference with the parties, the Court set

28

1  this matter for an evidentiary hearing on January 25, 2006 limited to the issue of service of

2  process.

3           Thereafter, Defendants filed a Motion for Leave to Conduct Limited Discovery

4  in relation to the January 25, 2006 hearing claiming that they needed to gather evidence

5  regarding the circumstances surrounding service of process in this matter. The Court did not

6  rule on this motion but permitted the parties to file memoranda in advance of the January 25,

7  2006 hearing. Defendants never contacted the Court regarding the status of their Motion nor

8  otherwise indicated that they needed the Court's assistance in gathering evidence for the

9  hearing.  The record in this matter indicates that the parties did engage in some discovery

10 regarding service of process and, therefore, the Court recommends that Defendants' motion

11 for leave to conduct limited discovery be denied as moot.

12          On January 25, 2006, the Court conducted an evidentiary hearing regarding this

13 motion to determine whether service of process was effective as to Defendant David Bittner

14 individually and as to Defendant David Bittner as statutory agent for the Trusts and LLCs.

15  Defendants did not request oral argument in their Motion to Set Aside Entry of Default

16 (document # 80).  Additionally, in view of the briefing in this matter, the Court determines

17 that additional argument is not necessary to resolve the pending motion. Mahon v. Credit

18 Bureau.of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir.1999) (explaining that if the

19 parties provided the court with complete memoranda of the law and evidence in support of

20 their positions, ordinarily oral argument would not be required); Domegan v. Fair, 859 F.2d

21 1059, 1065 (1st Cir. 1988)(stating that "the district courts have considerable discretion in

22 deciding whether or not to allow oral argument on a dispositive motion.").   After

23 consideration of the record in this matter, including the testimony and evidence presented

24 during the January 25, 2006 hearing, the Court concludes that service was effective as to

25 Defendant Bittner individually and as to Defendant David Bittner as statutory agent for the

26 Trusts and LLCs.  For the reasons set forth below, the Court recommends that the Motion to

27 Set Aside Entry of Default be denied.

28 / / /

1

**<u>BACKGROUND</u>**

2

On February 16, 2005, Plaintiffs commenced this action alleging numerous

3 counts of fraudulent conveyance in violation of A.R.S. § 44-1004(A)(1) and (A)(2)[1].

4 (document # 1) Plaintiffs named David Bittner as a Defendant.  Plaintiffs also named as

5 Defendants Maxmillian V.G.L. Bittner Irrevocable Income Trust and the Sequoia K.G.L.

6 Bittner Irrevocable Income Trust (hereinafter the "Trusts").  David Bittner is the Trustee for

7 the Trusts.  Plaintiffs also named the following limited liability corporations as defendants:

8 George Smith 334, LLC; Rector 42, LLC; Cardinal 37, LLC; Wildmint 615, LLC; Geranium

9 602, LLC; Sesame 691, LLC; Ripple 100, LLC; Pintail 341, LLC; Roundtree 598, LLC;

10 Squaw Valley 609, LLC; Cornflower 528, LLC; Cornflower 482, LLC; Wildmint 618, LLC;

11 Squaw Valley 504, LLC; Squaw Valley 505, LLC; Squaw Valley 506, LLC; Greenhill 588,

12 LLC; Greenhill 589, LLC; Greenhill 596, LLC; Longview 96, LLC; Longview 99, LLC;

13 Barberry 268, LLC; Dunlap 39326, LLC; Pepperweed 101, LLC; Badger 35, LLC;

14 Cornflower 526, LLC; Marigold 614, LLC; Partridge 74, LLC; Pinal 500-15-024, LLC; Pinal

15 500-15-023; LLC; Pinal 500-15-014, LLC; Pinal 500-11-042B, LLC; Pinal 11-042A, LLC;

16 Pinal 500-11-041, LLC (hereinafter the "LLCs").

17

Plaintiffs allege that from 2001 to 2003, Plaintiffs leased medical equipment to

18 and entered into promissory notes with Defendant Craig A. Bittner and several companies

19 which he owned.  (document # 1 at ¶ 1) Plaintiffs also performed maintenance of the medical

20 equipment pursuant to certain contracts with Craig Bittner's companies. (Id.) Plaintiffs allege

21 that starting in April of 2003, Craig Bittner and his companies began defaulting on their

22 obligations under the leases and promissory notes and on the maintenance contracts.  (Id.)

23 Plaintiffs further allege that, as a result of the defaults, they filed suit in the Superior Court

24 of Arizona, Maricopa County[2] and obtained judgments against Craig Bittner and three of his

25

26

27

[1] This matter is before this Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

28

[2] The late Honorable Michael J. O'Melia presided over CV2004-006247 and the Honorable Anna M. Baca presided over CV2004-004164.  (document # 1, Exhs. A, C)

1   companies, Sequoia Technologies, LLC ("Sequoia"), Healthscan America, Inc.

2   ("Healthscan"), and Advanced Diagnostic Therapeutics ("ADT"). (document # 1 at ¶ 1) The

3   judgments, including interest, exceed $35,000,000. (Id.)  Plaintiffs allege that Defendants

4   have not taken any action towards paying on these judgments. (document # 1)

5          Plaintiffs further allege that they have discovered that starting around August of

6   2003, after Craig Bittner's companies began defaulting on their obligations, Craig Bittner

7   transferred company funds to over thirty-five LLCs which he allegedly created to defraud

8   creditors, including Plaintiffs. (document # 1 at ¶¶ 60, 61) Plaintiffs allege that it is apparent

9   that the LLCs were created to defraud creditors because nearly all of the LLCs are owned and

10  managed by one or two trusts, the Maximillian V.G.L. Bittner Irrevocable Income Trust

11  ("Maximillian Trust") and the Sequoia K.G.L. Bittner Irrevocable Income Trust ("Sequoia

12  Trust"), whose trustee is Craig Bittner's father, David Bittner, and whose beneficiaries are

13  Craig Bittner's two minor children. (document # 1 at ¶ 1, ¶¶ 62-63) Plaintiffs allege that to

14  further hide assets, most of the LLCs have used all or part of the assets which they received

15  from Craig Bittner to purchase property in California and elsewhere. (Id. at ¶ 65)

16         After commencing this action, Plaintiffs' counsel hired Direct Access Legal

17  Services (hereinafter "Direct Access") to serve David Bittner individually and as the statutory

18  agent for the Trusts and LLCs.  Kirk Lamb, the owner of Direct Access and a process server

19  licensed in the State of Arizona, was the process server in this matter.   (Plaintiffs' hearing

20  Exhs. 2, 12) David Bittner and his wife, Rose Bittner, reside at 1160 Haisley Road, Prescott,

21  Arizona 86303.  The domestic address listed with the Arizona Corporation Commission for

22  each of the LLCs is also 1160 Haisley Road, Prescott, Arizona 86303.  David Bittner is the

23  statutory agent for service of process for the Trusts and LLCs.

24         Excluding Sequoia Technologies, each of the Defendants was served on or before

25  March 4, 2005.  (documents ## 4-46)  Neither David Bittner nor the LLCs and Trusts

26  answered or otherwise responded to the Complaint.  Therefore, on April 6, 2005, the District

27  Court granted Plaintiffs' Motion for Entry of Default and entered default as to Defendants

28  under Rule 55(a).  (document # 50)  Defendant Sequoia Technologies was served on May 2,

2005. (document # 57) On June 1, 2005, the Court entered default as to Defendant Sequoia Technologies. (document # 60) On June 3, 2005, Plaintiffs moved for entry of default judgment against all Defendants. (document # 61) On July 5, 2005, this matter was referred to the undersigned to prepare a Report and Recommendation on Plaintiffs' Motion for Default Judgment. (document # 62) On August 9, 2005, the undersigned conducted a Rule 16 pre-hearing conference regarding the Motion for Default Judgment. (document # 76) During that conference, counsel for Defendants indicated that he planned to file a motion to set aside the entry of default within five to seven days of the conference. (document # 83, Exh. D - Lieb Decl. at ¶¶ 4-5) Contrary to counsel's representation to the Court, he did not file a motion to set aside entry of default until over thirty days after the August 9, 2005 conference. Specifically, Defendants waited until September 16, 2005 to file a Motion to Set Aside Entry of Default pursuant to Fed.R.Civ.P. 55(c) claiming that they were confused regarding service in this matter and that service was ineffective. (document # 80) That motion is presently before the Court.

## ANALYSIS

Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Whether to set aside the entry of default is within the district court's discretion. Savarese v. Edrick Transfer & Storage, Inc., 513 F.2d 140, 146 (9th Cir. 1975). The defaulting party bears the burden of establishing "good cause" to set aside an entry of default. Franchise Holding II, LLC v. Huntington Restaurants Group, Inc., 375 F.3d 922, 925 (9th Cir. 2004). In determining whether there is good cause to set aside entry of default, the court considers: (1) whether the defaulting party engaged in culpable conduct which led to the default; (2) whether the defaulting party has a meritorious defense; and (3) whether setting aside the default would prejudice the party who obtained it. Benny v. Pipes, 799 F.2d 489, 494 (9th Cir. 1986), amended by, 807 F.2d 1514, cert denied, 484 U.S. 870 (1987); Mendoza v. Wight Vineyard Management, 783 F.2d 941, 946 (9th Cir. 1986). The court may deny a motion to vacate entry of default if: (1) the defaulting party's

1   conduct led to the default; (2) the defaulting party lacks a meritorious defense; or (3)

2   reopening the default would prejudice the plaintiff.   American Ass'n. of Naturopathic

3   Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th Cir. 2000).   These factors are disjunctive,

4   therefore, the court may deny a Rule 55(c) motion if it finds any one of the foregoing factors.

5   Franchise Holding, 375 F.2d at 926 (citing American Ass'n., 227 F.3d at 1108); Benny, 799

6   F.2d at 494 (stating that if defendants' "conduct provoked the default," the court need not

7   consider the other factors).   However, "'[w]here timely relief is sought from a default . . . and

8   the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion

9   to set aside the [default] so that cases may be decided on their merits.'"   Mendoza, 783 F.2d

10  at 946 (quoting Schwab v. Bullock's Inc., 508 F.2d 353, 355 (9th Cir. 1974))(other citations

11  omitted).   The Court will consider these factors below.

12  **I. Whether Defendants Engaged in Culpable Conduct**

13          As previously stated, the Court may deny a Rule 55(c) motion if the Defendants

14  engaged in culpable conduct that led to the entry of default.   American Ass'n., 227 F.3d at

15  1108. The issue of whether Defendants' conduct was culpable and led to the entry of default

16  "turns on whether or not [they] received actual or constructive notice of the filing of [the]

17  action." Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 815 (9th Cir. 1985).   Defendants

18  argue that their failure to timely answer the Complaint was not culpable because "there [was]

19  substantial and significant confusion regarding service of process"   (document # 80 at

20  5)(citing Mendoza, 783 F.2d at 946) and because service was ineffective.   The Court will

21  address these arguments below.

22                    **A. Whether Service of Process was Effective**

23          In the Motion to Set Aside Entry of Default, Defendants only challenge service

24  on David Bittner individually, and do not challenge service on David Bittner as agent for the

25  Trusts and LLCs.  (document # 80) However, in their Memorandum of Law Regarding Issues

26  to be Addressed at the January 25, 2006 Hearing (document # 96) Defendants argue that

27  service on David Bittner as an agent for the Trusts and LLCs was also ineffective.  During the

28  January 25, 2006 hearing, the Court heard evidence regarding both service incidents and

1   Defendants argued that both incidents of service were ineffective.   Likewise, Plaintiffs'

2   briefing, evidence, and arguments during the January 25, 2006 hearing addressed both

3   incidents of service.  Thus, despite the omission from the Motion to Set Aside Entry of

4   Default of the argument that the February 28, 2005 service on David Bittner as an agent for

5   the Trusts and LLCs was ineffective, the Court finds that Defendants have sufficiently

6   presented that issue to the Court and that Plaintiffs had a sufficient opportunity to respond

7   thereto.  Accordingly, the Court will consider Defendants' challenge to service as to David

8   Bittner personally and as to David Bittner as agent for the Trusts and LLCs.

9                  **1.  Burden of Proof Regarding Service**

10                 Where the sufficiency of service of process is challenged, plaintiff bears the initial

11   burden of establishing that service was valid.   5B Charles Alan Wright & Arthur R. Miller,

12   Federal Practice and Procedure  § 1353 (3d ed. 2004).  However, a process server's signed

13   certificate of service is prima facie evidence of service of process. Neilson v. Beck, No. 94-

14   520-FR, 1994 WL 578465, at * 3 (D.Or. October 18, 1994)(holding that "[a] signed

15   acknowledgment of service is prima facie evidence of valid service."); San Rafael Compania

16   Naviera, S.A. v. American Smelting & Refining Co., 327 F.2d 581, 588 (9th Cir.

17   1964)(holding that a "prima facie case [that the defendant cannot be found] is made by the

18   Marshal's returns, and that the burden then shift[s] to [the party claiming attachment was

19   invalid.]") Here, the process server filed signed certificates of service for each defendant in

20   this matter.  (documents ## 4-46, 57)  The Court finds that those returns of service constitute

21   prima facie evidence of service.

22                 Several courts analyzing challenges to service of process have held that "[a] signed

23   return of service constitutes prima facie evidence of valid service 'which can be overcome

24   only by strong and convincing evidence.'" O'Brien v. R.J. O' Brien & Assoc. Inc., 998 F.2d

25   1394, 1398 (7th Cir. 1993)(quoting Hicklin v. Edwards, 226 F.2d 410, 414 (8th Cir. 1955));

26   Corcoran v. Shoney's Colonial, Inc., No. CIV.A. 96-0043-C, 1997 WL 470365, at * 2

27   (W.D.Va. July 31, 1997).  Other courts, however, have held that the defendant need only

28

present "clear and convincing" evidence. <u>Witt v. Port of Olympia</u>, 126 Wash.App. 752, 757, 109 P.3d 489, 491 (Wash. App. 2005).

For purposes of the present motion, the Court will apply the less stringent "clear and convincing" standard.  Because the Court finds that the returns of service for the Defendants constitute prima facie evidence that service was made, Defendants must establish by clear and convincing evidence that service was not proper.

### 2  Service as to David Bittner Individually

Defendants assert "that due to the outrageous and unconscionable tactics utilized by the process server, Rose Bittner justifiably refused to answer the door . . . ." and, therefore, service as to David Bittner was ineffective.  (document # 80 at 6)

On or about February 23, 2005[3], process server Kirk Lamb went to the Bittner's residence at approximately 9:00 a.m.  (Plaintiffs' hearing Exh. 12, Lamb Decl.)  He knocked on the door and rang the door bell, but no one answered the door.  At 9:06, Lamb telephoned the Bittner residence but no one answered.  (Plaintiffs' Hearing Exh. 19[4])  During the January 25, 2006 hearing, Lamb testified that he saw someone inside the house and, therefore, continued to forcefully knock on doors and windows.  He testified that he was unsure whether the occupant was hard of hearing or simply refusing to answer the door, therefore he continued to pound on the windows and doors.  Lamb again telephoned the Bittners at 10:14 a.m. but got no answer.  (<u>Id.</u>)  In view of the difficulty he encountered in effecting service, Lamb telephoned his employer, Plaintiffs' counsel, for advice.  (<u>Id.</u>)  Lamb testified that Plaintiffs' counsel instructed him to continue trying to serve process.  Therefore, Lamb continued his efforts to get Mrs. Bittner to answer the door and accept service.    Lamb

---

[3] During the evidentiary hearing, Mrs. Bittner testified that Lamb first attempted service on February 26, 2005.  The record, including Defendants' briefing (document # 95) and the parties' stipulation (document # 92), indicates that the correct date is February 23, 2005. Regardless, the precise date is not at issue in this matter.

[4] Plaintiffs' Hearing Exhibit 19 was admitted into evidence during the January 25, 2006 hearing and is a record of Lamb's cellular telephone calls made on February 23, 2005. It identifies the Bittner's home telephone number as (928) 541-7901 and the telephone number of Plaintiffs' counsel, Simbro, White & Barfield, P.C., as (480) 607-0500.

telephoned the Bittners at least five times but no one answered.  (Id.[5])  Lamb left numerous messages on the answering machine identifying himself as a process server who was trying to serve Mr. Bittner.  For approximately three hours, Lamb repeatedly pounded on the doors, rang the door bell, and left messages on the answering machine.   During this period, Lamb contacted Plaintiffs' counsel several times for advice and was instructed to keep trying to serve process.  (Plaintiffs' Hearing Exh. 19)  At one point he climbed onto the roof of the house and peered through a window into a room which turned out to be the Bittner's bathroom.  Mrs. Bittner was in the bathroom at the time and "darted" out of the room.  After attempting to serve process for 2 ½ hours, Lamb parked his vehicle in the Bittner's driveway which abuts the house, opened all of the car doors and blasted rock music.  Lamb testified that he intended to blast rock music to agitate Mrs. Bittner to respond.  Lamb testified that he learned about the technique of playing loud music to agitate persons into acting a certain manner from his relatives who have been trained in military interrogation techniques. Lamb, however, has not received such training himself.

Mrs. Bittner testified that on the morning in question, her husband David was not home.  She testified that she heard pounding, horn blowing, and music blasting.  She did not open the door because she was not feeling well that day and was trying to rest.  She testified that Lamb's actions "terrified" her.  She testified that Lamb left numerous messages on the answering machine stating that he knew she was in the house and that he was going to order a pizza because he was not leaving.  After several hours, Mrs. Bittner called the police and a dispatcher stayed on the line until an officer arrived at the Bittner residence.

Officer Robert Keith Crabtree arrived on the scene and instructed Lamb to remain in his truck while he talked with Mrs. Bittner.   Officer Crabtree told Mrs. Bittner that Lamb was a process server who was trying to serve papers.  Mrs. Bittner testified that when the

---

[5]  The record reflects that Lamb telephoned the Bittner's residence on February 23, 2005 at 9:06 a.m., 10:14 a.m., 10:33 a.m., 10:45 a.m., and 11:25 a.m..  The record reflects that the process server left the service papers with Mrs. Bittner at around noon.  However, he again called the Bittner residence at 1:34 p.m. and 8:42 p.m. on that same day.  These calls related to Lambs' effort to serve Mr. Bittner as an agent for the Trusts and LLCs.

1  officer arrived she partially opened the front door which opened onto her front porch, a 4' x

2  6' foot slab of concrete.  She testified that the entire time that Officer Crabtree was at her

3  house, Lamb remained in his vehicle, never joined the officer on the front porch, and never

4  placed documents on the porch in her presence.  She testified that the process server left

5  before Officer Crabtree.  Defendants admit that Lamb left documents on the Bittner's porch

6  that day.

7       On the other hand, Lamb testified that although Officer Crabtree initially

8  instructed him to wait in his vehicle, he later gave Lamb permission  to complete his job.

9  Lamb testified that he then went to the Bittner's front stoop, where Mrs. Bittner was standing

10 outside of the house, and tried to hand her the papers for service on Mr. Bittner individually.

11 Lamb claims that Mrs. Bittner briefly touched the papers with her index finger and then

12 pushed them away.  Lamb then placed the papers at Mrs. Bittner's feet.  Lamb completed a

13 Certificate of Service by Private Process Server on February 23, 2005 indicating that he

14 served David Bittner by substitute service upon his wife Rose Bittner at their residence on

15 February 23, 2005 at around 12:00 p.m.  (document # 5)

16       Before the January 25, 2006 hearing, the parties stipulated that the Declaration of

17 Officer Crabtree and the statements therein are admissible evidence.  (document # 92) Officer

18 Crabtree's Declaration corroborates Lamb's testimony that he placed a copy of the Summons

19 and Complaint at Mrs. Bittner's feet on the front porch.    The Court finds that Lamb's

20 testimony that he placed the service papers near Mrs. Bittner's feet is credible in view of

21 Officer Crabtree's corroborating statement. <u>See</u> <u>Errion v. Connell</u>, 236 F.2d 447, 457 (9th Cir.

22 1956) (stating that "the weight to be given conflicting testimony is within the discretion of the

23 trial judge who, in this instance, had the parties before him.")

24       Federal Rule of Civil Procedure 4(e) provides that service upon an individual is

25 proper by leaving a copy of the summons and complaint at the person's house "with some

26 person of suitable age and discretion residing therein." Fed.R.Civ.P. 4(e); <u>see also</u> <u>Errion</u>, 236

27 F.2d at 457(finding valid service where sheriff pushed papers through a hole in the screendoor

28 after the defendant tried to evade service); <u>Gambone v. Lite-Rock Drywall Corp.</u>, No. 03-

3628, 124 Fed. Appx. 78, 79-80 (3d Cir. January 5, 2005)(unpublished[6])(affirming trial court's ruling in No. A. 01-1071, 2003 WL 21891584 (E.D.Pa. Aug. 7, 2003) that service was proper where process server knocked on door, person came to the door and then slammed the door in the process server's face, process server placed papers on the mat at the front door and yelled, "you have been served," and evidence showed that defendant received actual notice)(quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1095 (3d ed. 2002)(stating that "[i]t is well settled that 'a face to face encounter and an in hand delivery of the papers is not always essential . . . If the defendant attempts to evade service or refuses to accept delivery after being informed by the process server of the nature of the papers, it usually is sufficient for the process server . . . simply to leave them in the defendant's physical proximity."); Currie v. Wood, 112 F.R.D. 408, 408-09 (E.D.N.C. 1986)(finding service sufficient where defendant refused personal service, process server placed process on seat of nearby pickup trust belonging to defendant's employee while defendant was watching, and the employee delivered the papers to defendant's wife).

    Here, on February 23, 2005, the process server served David Bittner through substitute service on his wife, Rose Bittner.  The parties do not dispute that Mrs. Bittner is a "person of suitable age and discretion."  Fed.R.Civ.P. 4(e).  Mrs. Bittner admits that she refused to answer the door to the process server.  She claims that she initially did not open the door because she was not feeling well and would not have opened the door for anyone that day.  She further claims that even after Lamb had identified himself as a process server, she would not open the door for him because his behavior was "terrifying."  She claims that Lamb repeatedly pounded on windows and doors, peered into her bathroom window, blasted rock music, and left numerous messages on the answering machine stating that he being paid $40.

---

[6] Ninth Circuit Federal Rule of Appellate Procedure 36-3 governs the citation of unpublished Ninth Circuit decisions but does not apply to the citation of unpublished opinions from other circuits.  Third Circuit Local Rule of Appellate Procedure 28.3(a) provides that unpublished decisions my be cited provided that the citation "identif[ies] the court docket number and date and refers to the electronically transmitted decision).  Third Circuit Internal Operation Procedures 5.7 notes that non-precedential opinions are traditionally not cited but that citation of such opinions in not forbidden.

per hour[7] and was not going to leave.  She further testified that because the house is a split-level which is built into the side of a hill, in order to see into the house, Lamb must have climbed on a wall to see through the window of her grandchildren's playroom. Mrs. Bittner ultimately called the police and opened the front door for Officer Crabtree.  Lamb claims that after initially instructing him to wait in his truck, Officer Crabtree permitted Lamb to approach the front porch and to serve process on Mrs. Bittner.  Lamb testified that he attempted to hand the papers to Mrs. Bittner but she refused to take them.  Lamb states that he then placed the papers for service on David Bittner at Mrs. Bittner's feet on the front porch. Mrs. Bittner, however, claims that Lamb did not leave any papers in her presence but that she subsequently found them on the porch.  Regardless, the process server effected service upon Mr. Bittner by leaving a copy of the summons and complaint at his residence with his wife. See Fed.R.Civ.P. 4(e).  It was not necessary for Lamb to hand the service papers to Mrs. Bittner.  Rather, it was sufficient for him to leave the papers in Mrs. Bittner's physical proximity because Lamb had identified himself as a process server who was there to serve process on Mr. Bittner and Mrs. Bittner had refused to accept delivery of the papers. See, Currie, 112 F.R.D. at 408; Gambone, 124 Fed. Appx. at 79-80; Modern Electric Corp. v. Walsh, 197 F.R.D. 196, 197-199 (D.D.C. 2000)(finding service effective where process server let documents fall to the defendant's feet and later observed that the documents were no longer on the ground).

Defendants argue that Mrs. Bittner's refusal to open the door was justified because Lamb's behavior was, at the least, unconscionable and, at the most, criminal.   Defendants claim that Lamb violated Arizona law regarding disorderly conduct because he blasted rock music with the intention of aggravating Mrs. Bittner.  Although Defendants did  not cite the Arizona Revised Statute which Lamb's behavior allegedly violated in their Motion, at the January 25, 2006 hearing, Defendants referred to A.R.S. § 13-2904.  Section 13-2904 provides that "[a] person commits disorderly conduct if, with the intent to disturb the peace

---

[7]  During the January 25, 2006 hearing, Lamb testified that he charged a flat fee for service of process in this case but that fee was modified due to the difficulty of serving Mr. Bittner.

or quiet of a . . . person, or with knowledge of doing so, such person . . . [m]akes unreasonable noise . . . ."  Id..  Regardless of whether Lamb's conduct violated A.R.S. § 13-2904, Defendants do not cite any authority in support of their argument that service was either ineffective or should be invalidated because Lamb engaged in outrageous and possibly criminal conduct.  The Court's independent research has revealed no cases discussing whether the manner in which service is effected may render otherwise effective service of process void.  The Court finds Lamb's tactics wholly unacceptable in a civilized society guided by the rule of law and are possibly criminal.  There is visceral appeal to Defendants' argument that "a process server ought not to be permitted to break the law in order to enforce the law" which, candidly, tempts the Court to find service ineffective due to Lamb's egregious conduct.  However, because of the lack of case law on this issue and the Bittner's failure to provide any support for their novel argument, the Court declines to so rule.

The following facts are also significant to the Court's decision that this is not the appropriate case in which to explore new legal territory regarding service of process:  (1) when Officer Crabtree arrived on the scene and observed Lamb's behavior  he neither issued a warning nor citation to Lamb; (2) to the Court's knowledge, the Bittner's never pursued criminal charges or a civil action against Lamb, or filed a complaint with the Clerk of the Superior Court in the county where the incident took place[8]; (3) the Bittners admit that they received the documents that were left on the porch;  (4) David Bittner never read the

---

[8] Arizona Code of Judicial Administration § 7-204 governs process servers in the State of Arizona.  It provides that complaints against process servers must be filed with the Clerk of the Superior Court in the county where the incident took place.  The Court easily found information regarding filing a complaint against a process server, including a complaint form, by performing a simple search for "process servers in Arizona" on the internet.  The information can be found at www.supreme.state.az.us.

The Arizona Code of Judicial Administration provides that "certified process server[s] shall adhere to the code of conduct incorporated in this code section . . . . " § 7-204(F)(1). Section 7-204(H) provides that process servers are subject to discipline for wilful violations of Arizona law.  Appendix A to the Arizona Code of Judicial Administration, the Code of Conduct, provides that process servers must "be courteous and polite", Standard 3(g); perform the service of process in a professional manner, Standard 4(a), and shall not misrepresent fees, Standard 4(c).

1   Summons and Complaint but just assumed it was for his son; (5) the Bittner's waited

2   approximately five months after default was entered to file a Motion to Set Aside Entry of

3   Default in which they challenged Lamb's conduct for the first time.  In view of the foregoing,

4   the Court finds that service was effective as to David Bittner.  Although Lamb's conduct is

5   unacceptable and the Bittners may have grounds to file a civil complaint against him or his

6   license, his conduct does not excuse Mr. Bittner from his obligation to read the Summons and

7   Complaint and to respond thereto.  Even though the Bittners found Lamb's conduct appalling,

8   they took no action against him and only raised his conduct with the Court after default had

9   been entered.  The Bittners buried their heads in the sand and hoped that the litigation would

10  go away if they ignored it.  It didn't. Only after the default was entered did the Bittner's take

11  any action and then they acted slowly by filing a Motion to Set Aside Entry of Default only

12  after the undersigned inquired as to their intention to do so.   While the Court finds Lamb's

13  conduct unacceptable, especially considering the Federal Rules of Procedure permit

14  alternative methods of service when a defendant is avoiding personal service, the

15  circumstances of this case do not warrant the Court's journey into uncharted legal territory to

16  determine whether a process server's conduct can invalidate otherwise effective service.

17  **3. Service on David Bittner as Agent for the Trusts and LLCs**

18   Lamb was also hired to serve David Bittner as the agent for the Trusts and LLCs.

19  The address provided as the registered office and the business address for the agent of process

20  is the Bittner residence.  (document # 83, Exh. I)

21   At approximately 9:30 p.m. on February 28, 2005, Lamb returned to the Bittner

22  residence.  The house appeared empty, so he went to the back of the house to try to look into

23  the house.  At that point, a car pulled into the driveway.  Lamb waited in his position and after

24  a few minutes he was able to see Rose Bittner and a man, who Lamb assumed to be Mr.

25  Bittner, in the kitchen.  Lamb then called the Bittners on the telephone.  Lamb testified that

26  Mrs. Bittner answered the phone.  Lamb states that he identified himself as a process server

27  who was there to serve Mr. Bittner and that Mrs. Bittner stated that David was not home and

28  hung up the phone.  Lamb, having seen Mr. Bittner at the kitchen counter reading the

1   newspaper and eating soup, concluded that Mr. Bittner was at home.  Indeed, Mr. Bittner

2   testified that around 9:40-10:00 p.m. he was seated at his kitchen counter reading the

3   newspaper and eating soup.   Lamb then knocked on the front door but no one answered.

4   Lamb called the Bittners on the phone again, informed them that he was a process server, that

5   he was there to serve Mr. Bittner as agent for the Trusts and LLCs, and that because the

6   Bittners would not answer the door, he would leave the copies of the Summonses and

7   Complaints on the front porch. David Bittner found the Complaints and Summonses on his

8   porch the next morning.   David and Rose Bittner testified that they refused to answer the

9   door when Lamb arrived on February 28, 2005.  Mr. Bittner testified that he did not answer

10  the door because he was afraid that he would "assault" Lamb based on his behavior during his

11  previous visit to the Bittner's residence.

12          Defendants argue that Lamb's outrageous conduct on February 23, 2005 excuses

13  them from opening the door to Lamb on February 28, 2005 and renders service of process

14  void. The Court disagrees. Lamb did not engage in unconscionable behavior on February 28,

15  2005 and Mr. Bittner's residual anger from the February 23, 2005 incident is not sufficient to

16  invalidate service of process.   The Court finds that service of process was effective as to the

17  Trusts and LLCs.  Lamb completed a Certificate of Service by a Private Process Server on

18  February 28, 2005 for each of the thirty-six Trusts and LLCs indicating that he served each

19  of the Trusts and LLCs by serving David Bittner personally at this residence at 10:05 p.m..

20          This case is similar to Gambone where the court found that service was effective.

21  In that case, defendant slammed the door in the process server's face.  2003 WL 21891585,

22  at * 1.  The process server then "put the papers on the mat at the front door and hollered ' you

23  have been served,' and walked away." Id.  Shortly thereafter, defendant contacted one of the

24  plaintiffs and admitted that he had received the complaint. Id.  The Third Circuit found that

25  because defendant had tried to evade personal service and actually received the papers,

26  service was effective. Gambone, 124 Fed. Appx. at 80.

27          Similar to Gambone, David Bittner was aware that a process service was at his

28  home to serve papers.  He attempted to evade service by refusing to answer the door.  The

process server informed Mr. Bittner that he was leaving the service papers on the front porch and Mr. Bittner received those papers.    Like <u>Gambone</u>, this was effective service.    The Ninth Circuit has held that "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." <u>Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc</u>., 840 F.2d 685, 688 (9th Cir. 1988).  Here, Mr. Bittner admits that he received the service papers after he had refused to open the door.    Thus, service was effective.

### B.  Confusion Regarding Service of Process

In a further attempt to explain their failure to timely respond to the Complaint, Defendants contend that they were confused about service.  In support of that claim Defendants cite <u>Mendoza</u> wherein the Ninth Circuit affirmed the district court's order setting aside entry of default where the court found good cause based upon evidence that the parties against whom default had been entered "were confused regarding service, the existence of a meritorious defense, and the absence of prejudice to plaintiffs." <u>Id.</u>  Defendants argue that this matter is analogous to <u>Mendoza</u>.   (document # 80 at 5) The Court cannot ascertain why Defendants believe that this case is analogous to <u>Mendoza</u> because <u>Mendoza</u> does not explain the circumstances giving rise to the defendants' confusion in that case.  <u>Id.</u>  The <u>Mendoza</u> court merely stated that defendants "were confused regarding service" without explaining the facts surrounding service.   In view of the lack of details in the <u>Mendoza</u> decision, that case does not help resolve the issues before the Court.

Defendants contend that their failure to respond to the Complaint should be excused because they were confused regarding service of process.  Defendants explain that since 2004, Plaintiffs have been involved in litigation with several Bittner Defendants. (document # 80 at 5)  Specifically, Plaintiffs filed two complaints in the Maricopa County Superior Court.[9]  Defendants contend that the two state court actions have similar captions

---

[9] The actions are: *Siemens Medical Solutions, USA, Inc. v. Sequoia Technologies, LLC, fka Ameriscan, LLC, Advanced Diagnostic Therapeutics, and Craig Bittner*, Case No. CV2004-006247 and *Siemens Financial Services, Inc. v. Sequoia Technologies, LLC, fka Ameriscan, LLC, Advanced Diagnostic Therapeutics, and Craig A. Bittner*, Case No.

1   and that "one of them, CV2004-001464, had been active, including service of motions for

2   post-judgment debtor examinations of both Craig and David Bittner, contempt proceedings

3   and conducting an examination of David Bittner, in precisely the months immediately before

4   and after the alleged service in the instant case."  (document # 80 at 5)(citing Aff. of Craig

5   Bittner at ¶ 2)     Defendants further argue that Plaintiffs' filings in this case have been

6   "voluminous and repetitive." (document # 80 at 5) Therefore, Defendants claim that when the

7   "service of process literally began flowing relative to the commencement of these

8   proceedings, confusion arose in regard to the nature and identity of this action and the

9   Defendants understandably failed to discern that this action was in fact independent and

10   distinct from the proceedings already under way in Superior Court." (document # 80 at 5-

11   6)(citing Aff. of Craig Bittner at ¶ 4, Aff. of David Bittner at ¶¶ 5-7; Aff. of Rose Bittner at

12   ¶¶ 3, 8-9)

13          Defendants explain that David Bittner assumed that the papers which the process

14   server left at his residence related to actions pending against their son, Craig Bittner, in state

15   court. (document # 80 at 5-6)  Therefore, Mr. Bittner did not even read the documents but left

16   them in his garage to give to his son and then discarded them.  (document # 80 at 6)

17   Defendants argue that the confusion regarding service constitutes good cause to set aside entry

18   of default.  The Court disagrees.

19          Mr. Bittner's failure to read the Summonses and Complaints is inexcusable.

20   McManus v. American States Ins. Co., 201 F.R.D. 493, 500 (C.D.Cal. 2000)(denying motion

21   to set aside default judgment where the defendant claimed that he had assumed that the matter

22   had been filed in state, not federal, court and that a responsive pleading was due within 30

23   days rather then 20 days, holding that "[f]ailing to read the Summons is not an excusable

24   mistake.").  Even if Defendants assumed that the service papers pertained to the actions in

25   state court, they were still obligated to read the documents to determine whether they needed

26   to take any action with respect to those documents. Id. at 501 (stating that "[a]ssuming that

27   a suit was filed in state court is not a reasonable or understandable mistake.")   In fact, the

28   ———————————

CV2004-001464.

1    Bittners' involvement in ongoing state court litigation makes Mr. Bittner's failure to review

2    the documents which were left at his house even more unbelievable and irresponsible. TCI

3    Group Life Insurance Plan v. Knoebber, 244 F.3d 691, 699 n. 6 (9th Cir. 2001)(citing

4    Meadows v. Dominican Republic, 817 F.2d 517, 522 (9th Cir. 1987))(noting that "the

5    defaulting party's familiarity with the legal process or prior involvement in litigation is

6    relevant, but not determinative, in assessing whether a party's conduct in failing to respond

7    to service was culpable.)

8            The Court finds it surprising that an individual who is already involved in

9    litigation would simply disregard legal papers without even reviewing them.  Had Defendants

10   merely read the caption of the Complaint which identified the forum as the United States

11   District Court for the District of Arizona, they would have realized that the papers related to

12   a federal matter as opposed to the ongoing state litigation in Arizona Superior Court.  There

13   is no excuse for Defendants' failure to read the documents which the process server left at the

14   Bittner's residence on February 23 and 28, 2005.  Mr. Bittner assumed that the documents

15   were for his son, Craig Bittner, in relation to litigation in state court and made a conscious

16   decision not to read legal documents which were delivered to his home.  Defendants'

17   intentional ignorance of the contents of those legal documents does not excuse their failure

18   to respond to the Complaint.  The Court declines to set aside the entry of default based on

19   Defendants' alleged "confusion" because any confusion could have been clarified by simply

20   reading the legal documents.

21           The Court finds that because Defendants had notice of the Complaint, service was

22   valid, and Defendants chose not to read the Summonses and Complaints Defendants engaged

23   in culpable conduct which led to the entry of default. Franchise Holding, 375 F.3d at 926

24   (stating that [i]f a defendant 'has received actual or constructive notice of the filing of the

25   action and failed to answer,' its conduct is culpable.")(citation omitted); Pena v. Seguros La

26   Comercial, S.A., 770 F.2d 811, 814-15 (9th Cir. 1985)(holding that constructive notice of a

27   complaint was sufficient to find culpable conduct); Benny, 799 F.2d at 494 (holding that

28

1   defendants' failure to answer the complaint was culpable because they had notice of the

2   complaint and service was valid).

3          Moreover, Defendants did not seek relief from entry of default in a timely manner.

4   Timeliness is relevant to the Court's determination of whether to set aside entry of default.

5   Mendoza v. Wight Vineyard Management, 783 F.2d 941, 946 (9th Cir. 1986).

6          All but one of the Defendants were in default as of March 28, 2005.  The

7   remaining Defendant, Sequoia Technologies, was in default as of May 27, 2005.  Defendants

8   did not move to set aside entry of default until September 16, 2005.  Indeed, Defendants did

9   not express any indication that they were planning to file a motion to set aside entry of default

10  until the undersigned raised the issue during an August 9, 2005 conference regarding the

11  Plaintiffs' Motion to Enter Default Judgment.  (document # 76)  At that time, counsel for

12  Defendants advised the Court that he would file a motion to set aside entry of default within

13  a week.  However, Defendants did not file a Motion to Set Aside Entry of Default (document

14  # 80) until September 16, 2005, nearly thirty-nine days after the August 9, 2005 conference.

15  In view of the foregoing, the Court finds that Defendants' Motion to Set Aside Entry of

16  Default is not timely and Defendants engaged in culpable conduct in failing to respond to the

17  Complaint.

18  **II.  Whether Defendants have a Meritorious Defense**

19          If the Court finds that default was entered as a result of defendant's culpable

20  conduct, it need not consider whether a meritorious defense exists or whether plaintiffs would

21  be prejudiced if the default were set aside.  Benny, 799 F.2d at 494 (noting that the district

22  court was "correct to refuse to vacate the default judgment" where defendants engaged in

23  culpable conduct that led to the default).  However, in an abundance of caution, the Court will

24  consider whether Defendants have shown a meritorious defense.  Because default has been

25  entered Defendants have the burden of presenting "specific facts that would constitute a

26  defense." Franchise Holding, 375 F.3d at 925-26 (citing Madsen v. Bumb, 419 F.2d 4, 6 (9th

27  Cir. 1969)).  Conclusory statements or "[a] 'mere general denial without facts to support it'

28

1   is not enough to justify vacating a default or default judgment." <u>Franchise Holding</u>, 375 F.2d
2   at 926 (quoting <u>Madsen</u>, 419 F.2d at 6).

3          The Complaint contains eighty counts alleging fraudulent conveyance between or
4   among Defendants in violation of A.R.S. § 44-1004(A)(1) and (2). (document # 1)
5   Defendants assert that they have a meritorious defense to Plaintiffs' claims because Plaintiffs
6   have failed to carry their burden of proof.  (document # 80 at 7) Specifically, Defendants
7   argue that "Plaintiff[s] ha[ve] presented [their] claims to this Court without a scintilla of
8   substantive evidence." (document # 80 at 7) Defendants further argue that Plaintiffs have not
9   provided the Court with "any evidence or examination" supporting their allegations.
10  (document # 80 at 9)  These arguments do not establish a meritorious defense. Rather, they
11  are an attempt to shift the burden of proof to Plaintiffs.   However, Defendants have the
12  burden of proof on their motion to set aside entry of default.  Where the default has been
13  entered, as in this case, "the factual allegations of the complaint, except those relating to the
14  amount of damages, [are] taken as true." <u>TeleVideo Systems, Inc. v. Heidenthal</u>, 826 F.2d
15  915, 917-18 (9th Cir. 1987); <u>Benny</u>, 799 F.2d at 495 (stating that on a default judgment,
16  "[w]ell-pleaded allegations are taken as admitted.")(citations omitted).

17         Defendants further argue that none of the alleged fraudulent transfers were
18  property of a debtor "against which a judgment had been obtained by Plaintiffs" and that many
19  of the transactions "were done well before any suit seeking judgment was contemplated by
20  any creditor of Craig Bittner and/or any of his companies." (document # 80 at  9, 11)  These
21  allegations do not constitute a meritorious defense.  Arizona Revised Statute § 44-1004
22  provides that regardless of  "whether the creditor's claim arose before or after the transfer was
23  made," a fraudulent transfer includes a transfer made with the actual intent to defraud or
24  where a transfer was made without receiving reasonably equivalent value and the debtor's
25  assets were too small or its ability to pay its debts was compromised. A.R.S. § 44-1004(A).
26  Contrary to Defendants' assertion,  a creditor need not have obtained a judgment before the
27  transfer was made in order for that transfer to be fraudulent.  <u>Id.</u>; <u>Moore v. Browning</u>, 203
28

1    Ariz. 102, 106, 50 P.3d 852, 856 (Az.Ct.App. 2002)(noting that creditor includes a person

2    who has a right to payment whether or not that right has been reduced to a judgment).

3            Defendants also argue that some of the transfers were for repayment of loans that

4    Rose and David Bittner made to Craig Bittner.  (document # 80 at 9) Again, this argument

5    does not constitute a meritorious defense.  Defendants state that Craig Bittner owed his

6    parents either $200,000 or $300,000.  (document # 80 at 9; Aff. of David Bittner ¶ 13; Aff.

7    of Craig Bittner ¶ 9) Rather than repaying his parents, Craig Bittner put the money in "at least

8    one LLC."  (Aff. of Craig Bittner, ¶ 9)  Defendants do not specify whether the money was

9    given to the LLC or LLCs by Craig or one or more of his companies, they do not specify the

10   LLC or LLCs to which the money was given, they do not state when the transfers were made,

11   and they do not explain why the alleged transfers were made to the LLCs rather than to

12   creditors.  Defendants fail to provide "specific facts" required to set aside entry of default.

13   Franchise Holding, 375 F.3d at 925-26.

14           Defendants further contend that "none of the transfers were effectuated with the

15   intent to conceal."  (document # 80 at 9)  This conclusory statement does not constitute a

16   meritorious defense. Franchise Holding, 375 F.3d at 926 (denying relief where the defendant

17   offered "[a] 'mere general denial without facts to support it.'")(citation omitted).

18           Defendants also argue that "neither Craig Bittner nor any agent of his companies

19   absconded with, removed and/or concealed any asset of any debtor, against which Plaintiffs

20   had obtained a judgment."  (document # 80 at 9) Significantly, Defendants do not argue that

21   they did not abscond with, remove or conceal assets.  Rather, they only state that they did not

22   engage in such behavior after Plaintiffs had obtained a judgment.  As previously discussed,

23   in order for a transfer to be deemed fraudulent, it is not necessary for the transfer to have been

24   made post-judgment.  Moore, 203 Ariz. at 106, 50 P.3d at 857.

25           Finally, Defendants argue that the relief which Plaintiffs seek is overbroad because

26   it "endeavors to sweep into the grasp of a receiver, **all** of the assets of the named Defendants

27   alleged to have received any putative transfer, and not just the allegedly fraudulently

28   transferred assets."  (document # 80 at 11)(emphasis in original).  The issue of relief is not

1  before the Court in determining whether to set aside entry of default.  Rather, if the Court

2  denies the pending motion, the issue of relief will be addressed in relation to entering default

3  judgment.

4         In view of the foregoing, the Court finds that Defendants have not established the

5  existence of a meritorious defense.

6  **III. Whether Setting Aside Default would Prejudice Plaintiffs**

7         Finally, in determining whether to set aside the entry of default, the Court may

8  consider whether doing so would prejudice Plaintiffs.  If there is a possibility that a delay in

9  judgment would allow the defaulting party to hide assets, the Court may deny a Rule 55(c)

10  motion. Franchise Holding, 375 F.3d at 926-27(stating that where the defaulting party had not

11  made a single payment in two years and did not file a pleading with the district court until

12  after the clerk entered the default, the district court did not abuse its discretion in denying a

13  Rule 55(c) motion).

14         Here, Plaintiffs have obtained over $35 million in judgments against Craig Bittner

15  and three companies that he owns.   (document # 1 at 3)  However, Craig Bittner did not

16  cooperate in satisfying those judgments and failed to appear for a post-judgment debtor's

17  examination. (Id.) Craig Bittner and his father, David Bittner, have created numerous LLCs

18  that are owned by Trusts whose beneficiaries are Craig's children and whose Trustee is David

19  Bittner. Craig Bittner transferred money from his companies to the LLCs and then caused the

20  LLCs to purchase property. (document # 1 at 4) These facts suggest that there is a possibility

21  that a delay in judgment would allow Defendants to move assets.  Franchise Holding, 375

22  F.3d at 926-27.

23         Defendants argue that a delay will help Plaintiffs because "the Bittner Defendants

24  were (during the post-judgment proceedings conducted in the State court actions)

25  unrepresented and less than accessible for cooperative efforts in discovery." (document # 80

26  at 12)  Defendants contend that because they have presented themselves to this Court, "and

27  [are] available to participate and cooperate in these proceedings,"  discovery will be less

28  difficult. Id. The Court finds this argument unpersuasive.  Defendants rely on their prior lack

1  of cooperation in State court to establish that they are now available and cooperative.

2  Defendants' previous lack of cooperation cannot serve as a basis for setting aside the entry of

3  default.   Indeed, the Court finds it surprising the Defendants would even make such an

4  argument which merely highlights their history of ignoring their legal obligations.

5  **CONCLUSION**

6  Based on the foregoing, the undersigned recommends that Plaintiffs' Motion to Set

7  Aside Entry of Default Pursuant to Rule 55(c) (document # 80) be denied.

8  Accordingly,

9  **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion to Set Aside Entry

10  of Default Pursuant to Rule 55(c) (document # 80) be **DENIED.**

11  **IT IS FURTHER RECOMMENDED** that Defendants' Motion for Leave to

12  Conduct Limited Discovery (document # 89) be **DENIED** as moot.

13  This recommendation is not an order that is immediately appealable to the Ninth

14  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

15  Appellate Procedure, should not be filed until entry of the District Court's judgment.  The

16  parties shall have ten days from the date of service of a copy of this recommendation within

17  which to file specific written objections with the Court. 28 U.S.C. § 636(b)(1); Rules 72, 6(a),

18  6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within which to

19  file a response to the objections.  Failure timely to file objections to the Magistrate Judge's

20  Report and Recommendation may result in the acceptance of the Report and Recommendation

21  by the District Court without further review. *United States v. Reyna- Tapia*, 328 F.3d 1114,

22  1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the

23  Magistrate Judge will be considered a waiver of a party's right to appellate review of the

24  / / /

25  / / /

26  / / /

27

28

1   findings of fact in an order or judgment entered pursuant to the Magistrate Judge's

2   recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

3       DATED this 6th day of February, 2006.

4

5   _____

6                   Lawrence O. Anderson
          United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28